# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 515 | **DATE** | 11/22/2000 |
| **CASE TITLE** | Ruder vs. ComEd, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/6/2000 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 22 2000 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | NOV 22 2000 date mailed notice |
| SLB | courtroom deputy's initials | FILED FOR DOCKETING 00 NOV 22 AM 7:59 |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN RUDER, )
)
Plaintiff, )
)
v. ) 00 C 515
)
COMMONWEALTH EDISON, ) Judge George W. Lindberg
DISABILITY PLAN FOR )
MANAGEMENT EMPLOYEES and )
CONTINENTAL CASUALTY )
COMPANY, a CNA Company, )
)
Defendants. )

MEMORANDUM OPINION AND ORDER

Plaintiff, John Ruder, has filed this claim pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking long-term disability insurance benefits under an employee benefit plan sponsored by Commonwealth Edison (ComEd), his former employer. Ruder and defendant Continental Casualty Co. (Continental) have filed motions for summary judgment. For the reasons articulated below, the court grants Ruder's motion for summary judgment and denies Continental's motion for summary judgment.

I. Statement of Facts[1]

At the time Ruder made his initial claim for benefits, he was a department first line supervisor for ComEd in LaSalle, Illinois. His job required him to "assign work to his crew, monitor performance in the field, resolve issues, arrange for support to execute in a timely manor

---

[1] Continental objects to deposition testimony Ruder refers to in his Statement of Facts because it is not part of the administrative record. The court finds it unnecessary to address Continental's objection because it reaches its decision without relying on the deposition testimony.

[sic], review documentation, coach and mentor workers and document worker performance."
His duties involved "working overtime, shift work, climbing, lifting, work in confined spaces, work on electrically energized equipment and work in a respirator when required."

Ruder participated in an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. Continental Casualty Co. is the insurer and claims administrator of the employee welfare benefit plan under which plaintiff claims he is entitled to benefits. The long-term disability insurance plan from Continental that ComEd offered its employees provides total disability benefits for a period of 18 months if the insured, because of sickness or injury, is throughout an initial 180-day elimination period and thereafter:

> 1) continuously unable to perform the substantial and material duties of [his] regular occupation;
> 2) under the regular care of a licensed physician other than [himself];
> 3) not gainfully employed in any occupation for which [he] is or becomes qualified by education, training or experience.

After the 18-month elimination period, the insured receives total disability benefits if because of sickness or injury he is:

> 1) continuously unable to perform the substantial and material duties of any occupation for which [he] is or becomes qualified by education, training or experience; and
> 2) under the regular care of a licensed physician other than [himself].

The policy indicates that an insured who is claiming entitlement to benefits must provide "(w)ritten proof of loss . . . within 90 days after the end of a period for which We are liable." . . . "Benefits will be paid . . . immediately after We receive due written proof of loss."

On about September 20, 1996, plaintiff became cold, clammy and passed out while waiting for a vasectomy at Morris Hospital in Morris, Illinois. Plaintiff was admitted to the

-2-

hospital for further investigation. Three days later, Dr. John Dongas, a specialist in cardiology, performed a tilt test on plaintiff. Dr. Dongas performed three more tilt tests in September and October 1996, after which he concluded that plaintiff had vasodepressor syncope.[2] He prescribed a new medication to plaintiff after the usual medications used to treat the condition were ineffective. On February 12, 1997, Dr. Dongas wrote a letter to ComEd in which he stated:

> The plaintiff is a very advanced case of vasodepressor syncope, and he has thusfar been resistant to all of the various medications that we have used to try to control this problem . . . (H)e still has episodes of dizzy spells and near syncopal events . . .
> I do not think that he is able to work in the capacity that he was working before at the present time, since his job included climbing ladders that were 90 feet high. Furthermore, even driving to work would be a hazard in his case, and therefore I advise that he continue to be on disability until such time that his symptoms resolve.

Dr. Dongas wrote ComEd again on May 28, 1997, stating that

> "although [plaintiff] has not had any syncopal events since I saw him last, which was in February, he still has occasional dizzy spells. I therefore think that he is improved, although I cannot guarantee he cannot suffer another syncopal event. As far as his ability to work, that is something that is difficult to assess, but it probably would depend on exactly what his work entailed, especially if it entailed going up ladders, where a sudden loss of consciousness could be catastrophic. I feel that would probably still not be advisable at this point, although if he goes a certain period of time without any syncopal event, even that could be reconsidered.

Sometime in September or October 1997, plaintiff returned to work in a part-time, restricted capacity, apparently performing some type of office work that did not require him to climb or lift. On November 14, 1997, a fellow employee found Ruder unconscious at his desk

---

[2] "Syncope" is "a partial or temporary suspension of respiration and circulation due to cerebral ischemia and characterized by sudden pallor or complete unconsciousness." *Webster's Third New International Dictionary*, 2319 (1986). Plaintiff's physician, as well as the Administrative Law Judge of the Social Security Administration, describe plaintiff's condition as profound drops in blood pressure that lead to fainting and fatigue.

after he had experienced a syncopal event. He was transported by ambulance to the hospital and has not worked since this incident.

On April 10, 1998, Ruder submitted a long-term disability employee's statement to Continental in which he stated that "unpredictable syncope, dizziness, [and] chronic fatigue" prevented him for returning to work. On July 9, 1998, Continental notified plaintiff that it had denied his claim for long-term disability benefits. It stated in the letter that it had determined that Ruder's condition "is not of a magnitude that prevents your [sic] from performing the substantial and material duties of your occupation." Continental also stated that "according to the information we received from your employer, you worked at a desk job on a part time basis, from 10/21/96 through 11/14/97. Based on this information, we have determined that your occupation is this sedentary job you had been performing."

Ruder requested a reconsideration of his claim on August 9, 1998. He subsequently submitted additional medical records and a memo from Joe Kutches at ComEd that described Ruder's regular work duties as well as the duties he had performed after returning to work in September or October 1997, which included reviewing procedures and work packages at his desk for a few hours a day. Kutches indicated that no position in the department "would allow a person to remain at a desk on a full time basis. All positions require some interaction with the power plant and require a person to be fit to work in a nuclear power plant environment."

Dr. Dongas also submitted additional documentation in which he stated that plaintiff suffered from adult chronic fatigue syndrome as well as syncope and he did "not see much hope in him being able to resume any useful work." In a separate letter, Dr. Dongas disagreed with Continental's assessment that Ruder had experienced "five to six episodes in the past two years."

He clarified that Ruder had many more episodes of lightheadedness and profound fatigue than that and had actually experienced this type of episode on an almost daily basis. Dr. Dongas stated that "the fatigue, as much as the syncope, seems to be preventing him from being able to function properly, but I believe it is quite real, and is not in any sense a psychosomatic type of illness."

Continental reversed the denial of plaintiff long-term disability benefits on November 17, 1998. It informed plaintiff that "the information in our file at this time indicates you are currently unable to perform the duties of your occupation. However, the information does not support your inability to perform duties of another occupation for which you have training, education or experience."

In December 1998, plaintiff submitted another claim form alleging that he was totally disabled from any occupation and was therefore entitled to long-term disability benefits beyond the initial 18-month period. Dr. Dongas signed the attached Attending Physician's Statement and checked the boxes indicating that plaintiff was disabled from his job and from any other work. Dr. Dongas also submitted a letter in which he stated that:

> If the plaintiff stands or sits for any length of time, he becomes lightheaded, because of a drop in blood pressure, and frequently will faint. He is thus unsuited to operate any kind of machinery, or even to basically do work which involve him standing or sitting for long periods of time. Obviously he would be unsuited to work at heights. He would be unable to operate motor vehicles, although he does not have any problems with drowsiness, he has had syncope, in other words, passing out spells.

Continental retained Intracorp to complete an independent vocational assessment on Ruder in January 1999. In April 1999, Jane Beougher, a vocational consultant for Intracorp, interviewed plaintiff and outlined his educational and vocational history. She then conducted a

labor market survey for plaintiff's home area. After reviewing plaintiff's file and noting his educational and employment histories, Beougher searched for maintenance supervisor positions in the area, contacting "numerous property management companies, apartment and condominium complexes, realty companies, and municipalities." The resulting "Labor Market Survey" contained four maintenance positions, all of which required a general knowledge of repairs and upkeep of property. All listed physical requirements such as bending, light lifting, climbing, stooping, squatting and walking. Three of the four companies specifically noted that there were no positions currently open; the fourth noted that 12 positions existed but did not state whether there were any current openings.

In July 1999, Dr. Dongas sent an attending physician statement to Continental in which he certified that plaintiff was "totally disabled" from his own job as well as "any other work." He stated that Ruder could not perform any job because he could not "stand or sit for any period of time." The report indicated that Dr. Dongas expected no change in Ruder's condition.

Continental denied plaintiff's claim for benefits under the policy in a letter dated July 14, 1999, stating that "(w)e have determined that, while you will remain disabled from your own occupation, your medical condition does not cause a functional impairment to the extent that you are unable to perform other occupations for which you are qualified. This determination has been made on the basis of medical information provided by Dr. Dongas and a vocational analysis performed by our Vocational Case Manager."

Plaintiff appealed this denial on September 2, 1999. He submitted 1) records from Aetna U.S. Healthcare, Inc., ComEd's life insurance employee benefit plan, that indicated Aetna had approved plaintiff's claim for benefits as a result of permanent and total disability; and 2) a

complete copy of the record, including the final ruling, from the Social Security Administration hearing. Under the Aetna policy, an insured is entitled to benefits for a permanent and total disability "if either a disease or injury has existed continuously for a period of six months or more, stops you from working at any job for pay or profit, and continues to stop you, for life, from working at any reasonable job." Dr. Dongas' report to Aetna, dated May 19, 1999, stated that plaintiff "cannot stand or sit for very long [without] developing lightheadedness or syncope" and that Dr. Dongas considered plaintiff "totally and permanently disabled from any and all occupations" unless his condition changed. Dr. Dongas did not, however, expect plaintiff's condition to change.

The record from the Social Security proceeding contained documents not previously submitted to Continental, including a medical report from Dr. Rito Maningo written after he examined plaintiff on April 7, 1998, at the request of the Bureau of Disability Determination Services, Springfield, Illinois, and a psychological assessment from Dr. Mark Langgut. Dr. Maningo stated in his report that plaintiff had "no premonitory symptoms of syncope" and had therefore been advised not to drive. He reported that "walking doesn't seem to bother [plaintiff] and sitting down in a chair for many hours doesn't seem to bother him. He is dizzy off and on especially when he is standing up more than 30 minutes." Dr. Langgut's report indicated that plaintiff had a depressed mood, alcohol abuse in remission and vasosuppressor syncope.

The Social Security Administration's ruling stated that plaintiff:

(H)as the following impairment which is considered to be 'severe' under the Social Security Act and Regulations: advanced vasodepressor syncope with profound drops in blood pressure resulting in occasional syncope episodes, and daily episodes of dizziness and fatigue. This impairment prevents the claimant from performing any sustained work activity on an 8-hour-a-day basis, as expected in competitive employment. The claimant

-7-

experiences daily episodes of dizziness and fatigue which impact significantly on his activities of daily living. The frequency with which they occur would preclude any work activity for significant periods of time, such as an 8-hour day.

On January 12, 2000, plaintiff's counsel submitted to Continental the Social Security Administration's ruling that approved plaintiff's claim for disability benefits. In that ruling, the administrative judge stated that "(b)ased on the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant number which he can perform."[3]

On January 20, 2000, Continental's Appeals Committee upheld the decision to deny plaintiff disability benefits. It stated:

> Please be advised that verification [that] a medical condition exists does not confirm your client's inability to perform the duties of any occupation nor does it prove any disabling impairment. Your client may experience some problems associated with his condition however, the medical evidence fails to substantiate a condition of such severity as to prevent Mr. Ruder from returning to work in a light or sedentary occupation.

Plaintiff filed the instant action on February 3, 2000, claiming that Continental wrongfully denied him benefits under 29 U.S.C. § 1132(a)(a)(B). As indicated, plaintiff and Continental have filed cross motions for summary judgment. Federal Rule of Civil Procedure 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[3] "Disability" under the Social Security Act is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the court is faced with cross motions for summary judgment, it must adopt a "dual perspective." *Stimsonite Corp. v. Nightline Markers, Inc.*, 33 F.Supp.2d 703, 705 (N.D.Ill.1999). The court finds that the record supports a finding that plaintiff is entitled to summary judgment.

II. Discussion

A. Standard of Review

When assessing a benefits determination under ERISA, the court must choose between ERISA's two review standards: "*de novo*" or "arbitrary and capricious." The default rule is that a court applies a *de novo* standard of review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," however, the only question left for the court is whether the administrator's decision was "arbitrary and capricious." *Id.*

Defendant spends much of its brief arguing that the court should examine its decision to deny Ruder benefits under the arbitrary and capricious standard of review. It claims that the following language from the policy indicates that the policy grants Continental discretion to determine eligibility for benefits:

> Benefits will be paid monthly immediately after [Continental Casualty] receive[s] due written proof of loss.

Defendant compares the phrase "due written proof of loss" to policy language found in several cases in which the Sixth Circuit held that an arbitrary and capricious standard of review was appropriate. The policy language the Sixth Circuit relied on in those cases included:

-9-

> (W)ritten proof of total disability must be furnished to [Aetna] within ninety days . . . Subsequent written proof of the continuance of such disability must be furnished to [Aetna] at such intervals as [Aetna] may reasonably require.

*Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998);

> An Employee shall be deemed to be totally disabled only if . . ., on the basis of medical evidence satisfactory to the Insurance Company, the employee is found to be wholly prevented . . . from engaging in regular employment or occupation;

*Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991), and, finally, that a claimant was required to provide "satisfactory proof of Total Disability." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). Defendant claims that the language in its own policy requiring "due written proof" of total disability is comparable to the language from the three cases cited above and therefore requires to court to apply an arbitrary and capricious standard of review.

Notably absent from defendant's brief is any cite to *Herzberger v. Standard Ins. Co.*, in which the Seventh Circuit held:

> (T)he presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they are due, or only if the applicant submits *satisfactory proof* of his entitlement to them.

205 F.3d 327, 331 (7th Cir. 2000) (emphasis added). The Seventh Circuit reasoned that a requirement that a plan participant provide "proof or satisfactory proof" of a disability does not "give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary. Obviously a plan will not–could not, consistent with its fiduciary obligation to the other participants–pay benefits without first making a determination that the applicant was entitled to them. The statement of this truism in

-10-

the plan document implies nothing one way or the other about the scope of judicial review of his determination." *Id.* at 332.

Plaintiff asserts that *Herzberger* is directly on point and requires the court to apply a *de novo* standard of review to Continental's decision to deny benefits. The court finds that defendant has indeed intentionally disregarded Seventh Circuit case law that is directly on point. When confronted with its omission, defendant attempts to characterize the Seventh Circuit's holding in *Herzberger* regarding policy language of "due proof" as "dicta." It claims that while *Herzberger* "suggests" that plan language requiring "due proof" is insufficient to merit a deferential standard of review, that case dealt with plan language that a participant must provide "satisfactory written proof" before benefits would issue. Evidently, Continental finds this distinction so material that it asks this court to:

> "treat *Herzberger*'s suggestion that 'due proof' language is insufficient as dicta and should follow the decisions of other courts in the Seventh Circuit holding that plan language similar to this case requiring 'due proof' grants sufficient discretion to merit an arbitrary and capricious standard of review."

The decisions of other courts to which Continental refers, however, are two district court cases which, in addition to being only persuasive authority, were decided <u>before</u> the Seventh Circuit's ruling in *Herzberger*. In the portion of the case quoted above, the Seventh Circuit clarified that an adjective such as "satisfactory" before "proof" was not enough to convert the standard of review from plenary to deferential. An adjective such as "due" before "proof," as is the case here, leads to the same result. There is no doubt that under *Herzberger*, plenary review of CNA's decision is appropriate given the lack of policy language granting discretionary decision-making authority to the plan administrator.

-11-

B.   Denial of Benefits

Continental argues that regardless of which standard is applied, its decision to deny Ruder benefits under the plan should be upheld. It bases its motion for summary judgment, as well as its opposition to plaintiff's motion for summary judgment, on its contention that plaintiff's condition does not preclude him from performing a sedentary position, as evidenced by the following: 1) that plaintiff worked in a sedentary capacity for over a year after the onset of his condition and can therefore continue to do so; 2) that Dr. Dongas' description of plaintiff's abilities indicate that plaintiff can perform a sedentary occupation; 3) that Dr. Maningo stated in his report that "walking doesn't seem to bother plaintiff and sitting down in a chair for many hours doesn't seem to bother him"; and 4) that the ruling from the Social Security Administration indicated that there are jobs plaintiff can perform.

Plaintiff responds that under a *de novo* standard of review, there is no doubt that he has proved his eligibility for benefits under the policy and is entitled to summary judgment. He points to his treating physician's assessments of his condition and capacity to work as well as to the Social Security Administration ruling granting him benefits and the award of similar benefits from Aetna, another of Commonwealth Edison's life insurance plans.

The court will first dispose of Continental's contention that proof of Ruder's ability to work in a sedentary capacity even with his condition is the fact that he did so for over a year. The record support defendant cites for this assertion is plaintiff's admission that he "was first treated for his condition on September 20, 1996, and that he last worked on November 11, 1997." As plaintiff points out, however, after being diagnosed with vasodepressor syncope in September 1996, he was off work on temporary disability leave from that date until approximately a year

later. In September or October 1997, Ruder returned to work in a part-time, restricted capacity. He worked in that position for only one to two months before being admitted to the hospital on November 14, 1997, after having an episode of syncope at work that rendered him unconscious.

Defendant next claims that its decision to deny benefits was justified because although Dr. Dongas indicated that plaintiff was unemployable, his description of plaintiff's condition indicates that plaintiff could indeed perform a sedentary position. Continental states that Dr. Dongas did not allege that plaintiff could not perform a sedentary job where he could take breaks and rest. Therefore, according to Continental, plaintiff must be able to perform such a position.

Again, the court finds that the record does not support this contention. Dr. Dongas may not have literally stated (or written) that plaintiff could not perform a sedentary job even if allowed to take breaks and rest, but he did say that Ruder had been resistant to all of the medications generally used to try to control syncope and that Dr. Dongas did "not see much hope in [Ruder] being able to resume any useful work." He later clarified that Ruder suffered from adult chronic fatigue syndrome as well as syncope; experienced episodes of lightheadedness and profound fatigue on an almost daily basis; became lightheaded because of drops in blood pressure and would frequently faint if he stood or sat for *any* length of time (not just extended periods of time); and that Dr. Dongas thought plaintiff was generally unemployable.

Continental also relies on Dr. Maningo's report to assert "that Plaintiff could perform an occupation in which he was allowed to alternatively sit and/or walk for many hours." Dr. Maningo stated that "walking doesn't seem to bother [plaintiff] and sitting down in a chair for many hours doesn't seem to bother him. He is dizzy off and on especially when he is standing up more than 30 minutes." Even if the court agreed that Dr. Maningo's medical report does

clearly indicate that plaintiff could perform the sedentary position Continental describes–which it does not–it would be disinclined to allow the opinion of a doctor who examined plaintiff once to override the repeated and consistent assessments of his treating physician, who submitted more recent and thorough evaluations of plaintiff's condition and who stated that standing or sitting for *any* length of time could lead to dizziness or fainting. This is especially the case where Dr. Maningo also indicated that plaintiff was dizzy off and on, *especially* when standing but not *only* when standing. He also made no mention of plaintiff's chronic fatigue and how that would affect his ability to work. Continental's interpretation of Dr. Maningo's report also contradicts the Administrative Law Judge's finding at the conclusion of a full administrative review that plaintiff's symptoms "would preclude any work activity for significant periods of time, such as an 8-hour day."

Continental claims that further support for its position can be found in Dr. Langgut's psychological assessment, which contains no indication that plaintiff is incapable of working because of a psychological condition. Because plaintiff is not claiming disability from any psychological condition, that observation is simply not probative of any material issue here. In fact, Dr. Langgut's assessment is perfectly supportive of Dr. Dongas' contention that plaintiff has an objectively identifiable physical condition and that he did not believe plaintiff's condition was psychosomatic. The court therefore finds that the medical reports and evidence indicate that plaintiff's condition renders him unable to perform significant work activity.

To further support his claim that no genuine issue of material fact exists as to whether he is entitled to benefits under Continental's policy, Ruder submits the full record and ruling from the Social Security Administration hearing and the records from Aetna U.S. Healthcare, Inc.,

-14-

ComEd's life insurance employee benefit plan, that indicated Aetna had approved plaintiff's claim for benefits as a result of permanent and total disability. He claims that the unreasonableness of Continental's decision is evidenced by the fact that two other benefits providers, making independent assessments of his condition and applying similar standards of employability, granted him benefits.

Although plaintiff acknowledges that a ruling from the Social Security Administration is not dispositive, he points out that it is entitled to some weight. *See Ladd v. ITT Corp.*, 148 F.3d 753, 755-56 (7th Cir. 1998). Continental argues that the Social Security Administration ruling has "no bearing" on the instant plant and claim for benefits because its standard for determining whether an insured is prevented from working differs from the standard in the instant policy. It claims that its plan provides benefits only when a claimant is "continuously unable to engage in the substantial and material duties of any occupation for which [he] is or becomes qualified by education, training or experience." The Administrative Law Judge found that there were no jobs in significant number that the plaintiff could perform. Defendant asserts that this "clearly demonstrates that there are [some] jobs Plaintiff can perform" (just not jobs in significant number) and that under the terms of the instant policy plaintiff is therefore not entitled to benefits. A finding that plaintiff was unable to perform jobs that existed in significant number in the economy is not necessarily a finding that jobs existed in insignificant number in the economy. The Administrative Law Judge simply did not address the issue of how many job plaintiff could perform because he found that plaintiff's condition prevented him from working "any work activity for significant periods of time."

-15-

In addition, Continental's distinction between its own policy's standard and the Social Security Administration's standard is refuted by Seventh Circuit case law, which holds that "total" disability requirements such as that in the instant policy are not materially different from "general" disability requirements such as the SSA's. *Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir. 1992). In *Hammond*, the court held:

> Disability provisions generally fall within one of two classifications, and the difference between them is substantial. An "occupational" disability policy provides benefits if the claimant is unable to perform his regular job; a "general" disability provision provides benefits if the claimant is unable to perform any job for which he is qualified by reason of education, training or experience. Although broad in scope, "general" disability provisions should not be construed so literally that an individual must be utterly helpless to be considered disabled. Rather, the insured should be entitled to recover provided he or she is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation.

*Id.* at 430-31 (internal citations omitted). Both the policy language at issue and social security regulations require the claimant to have a "general" disability. The court is not persuaded by Continental's argument that its policy requires plaintiff to be unable to perform even one job in the local economy before he is entitled to benefits. Even if the court were to accept Continental's assessment of plaintiff's physical capabilities, it has simply not supported its contention that sedentary jobs exist in the economy that allow frequent breaks and rest. Continental points to the vocational assessment it commissioned to prove that jobs existed in the local economy that plaintiff could perform. The assessment listed four maintenance supervisor positions in the area. There is, however, no indication in the vocational assessment that these positions conform with the physical restrictions that plaintiff's physician described. The job descriptions include duties such as bending, light lifting, climbing, stooping, squatting and walking. Despite Continental's description of them as such, it is clear that these maintenance

-16-

positions are not sedentary. There is no indication that they allow for frequent rests.[4] Dr. Dongas advice that plaintiff should not climb up ladders, "where a sudden loss of consciousness could be catastrophic," in itself bars plaintiff from performing at least one job duty.

The court finds that plaintiff has provided sufficient evidence to establish that no genuine issue of material fact exists as to whether he is entitled to benefits under Continental's policy. It therefore grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

**ORDERED**: For the foregoing reasons, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

**ENTER**:

George W. Lindberg
United States District Judge

DATED: NOV 2 1 2000

---

[4] Considering the information on three of the four listings that the company was not currently hiring, it is also not clear that these were positions that were even available in the local economy.

-17-